O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURMEET GURMEET,<br><br>Petitioner,<br><br>v.<br><br>PAM BONDI et al.,<br><br>Respondents. | Case No.: 5:26-cv-00620-MEMF-AS<br><br>**ORDER GRANTING IN PART PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 2]** |

    Before the Court is the Application for Ex Parte Temporary Restraining Order filed by Petitioner Gurmeet Gurmeet. Dkt. No. 2 ("Application"). Petitioner requests that this Court enter a temporary restraining order and a preliminary injunction. For the reasons stated below, the Motion is GRANTED IN PART.

/ / /

/ / /

/ / /

/ / /

1

## I. Background

### A. Factual Background[1]

Petitioner is a citizen of India. Dkt. No. 1 ¶ 6 ("Petition"). He has no criminal history and no gang association. *Id.* ¶ 23. He entered the United States on or around April 28, 2023. *Id.* ¶ 15. He entered without inspection, but was detained shortly thereafter. *Id.* ¶¶ 15–16. He has remained in the United States for almost three years. *Id.* On or around April 30, 2023, DHS issued a Notice to Appear to Petitioner, and Petitioner was released under an Order of Supervision. *Id.* ¶ 16.

Upon release, Petitioner moved to Milpitas, California. *Id* ¶ 17. In April 2023, ICE ordered Petitioner to report after a year, with which he complied. *Id.* ¶ 18. After that appointment, Petitioner attended three to four ICE check-ins and never missed any of his appointments. *Id.*

Petitioner timely filed his application for asylum and updated it to provide the most up-to-date information to the court in October 2025. *Id.* ¶ 6, 21. He has also filed for withholding of removal and for relief under the Convention Against Torture. *Id.* ¶ 6. These applications are all pending in immigration court. *Id.* ¶ 6.

On July 24, 2025, around 7:00 AM, ICE officers conducted a traffic stop without probable cause, and Petitioner complied. *Id.* ¶ 22. Once Petitioner told the officers his name, the officers redetained him. *Id.* ICE did not give Petitioner prior notice, cite new circumstances that justified his re-detention, or schedule Petitioner for a hearing. *Id.* at 2.

### B. Procedural History

On February 11, 2026, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this matter. *See* Petition. On the same day, Petitioner filed the Application. *See* Application. This Court accordingly set an expedited briefing schedule, which ordered Respondents

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition for a Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

2

to file an opposition by February 13, 2026, at 5 PM, and allowed Petitioner to file a Reply by February 17, 2026, at 5 PM. *See* Dkt. No. 5.

On February 13, 2026, Respondents filed a timely opposition brief. *See* Dkt. No. 8 ("Opp." or "Opposition"). The same day, Petitioner filed a reply brief. *See* Dkt. No. 9 ("Reply"). This Court, upon review of the filings, finds that this matter appropriate for decision without a hearing. L.R. 83-9.1.1.

## II. Applicable Law

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Rule 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if the movant shows "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. sections 1221 to 1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

Once an immigrant has been "released under an order of supervision," the following rules govern. 8 C.F.R. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### III. Discussion

This Court first addresses Respondents' only argument in Opposition—that Petitioner is not entitled to relief beyond a bond hearing[2]—before turning to the merits of the Application.

#### A. *Maldonado Bautista* does not limit Petitioner's potential relief.

In Opposition, Respondents' sole argument turns on the applicability of the final judgment entered in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM. The Court in that case certified a "Bond Eligible Class" as follows:

---

[2] The Opposition concedes that—per the entry of final judgment in *Maldonado Bautista*—Petitioner is entitled to a timely bond hearing. Opp. at 2. To that end, this Court understands the TRO to be unopposed insofar as it asks for a bond hearing.

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1226(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista*, Dkt. No. 82 at 15. The Court, entering judgment in favor of Petitioners, found that "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista*, Dkt. No. 94 at 15.

Respondents argue that "Petitioner's claim in this action appears to be subject to the *Bautista* judgment and to any applicable appellate proceedings relating to it." Opp. at 2. In Reply, Petitioner argues that the *Maldonado Bautista* judgment does not limit his possible relief to a bond hearing. Reply at 3–4.

As an initial matter, neither party cites any authority for the proposition that membership in a class might impact other forms of relief that a party may seek individually. The Opposition references no cases beyond *Maldonado Bautista*; the Reply references cases in which relief predated the judgment in *Maldonado Bautista*. But that case's orders on final judgment and class certification do not appear to suggest that all members of the Bond Eligible Class are *only* entitled to the relief granted at final judgment. Nor is it clear that Petitioner has received notice that he is a member of the Bond Eligible Class, such that he could opt out of whatever binding effects that judgment could have on him. *See* 11A Wright & Miller's Federal Practice & Procedure § 1789.1 (3d ed.) (noting that "the Constitution requires a right to opt out, as well as receipt of notice of the suit"); *see also Silber v. Mabon*, 18 F.3d 1449, 1451 n.2 (9th Cir. 1994) ("Pursuant to Rule 23(c)(2), an absent class member must be given notice of his right to opt out of the class and to pursue his claim individually.").To that end, because Respondents do not support their argument that judgment in *Maldonado Bautista* limits Petitioner's ability to seek relief beyond a bond hearing, this Court will consider the merits of Petitioner's request.

    **B. Applying the *Winter* factors, Petitioner is entitled to a temporary restraining order.**

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Petitioner is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

The Petition argues three grounds upon which a temporary restraining order should be granted. First, Petitioner argues that he has been unlawfully denied a bond hearing, pursuant to 8 U.S.C. § 1226(a) and the APA. Petition ¶¶ 68–75. Second, Petitioner argues that his continued detention is unconstitutional under the Fifth Amendment. *Id.* ¶¶ 76–80. Third, Petitioner argues that his continued detention is in violation of the Government's regulatory provisions to provide written notice of custody determination explaining the basis for redetention.[3] *Id.* ¶¶ 81–82.

The Court applies the *Winter* factors to Petitioner's claims below.

    i. The first *Winter* factor, likelihood of success on the merits, is met.

Petitioner argues that he is entitled to a release order because the Government violated both due process and the APA by re-detaining him without notice and an opportunity to be heard. For the reasons below, he is likely to succeed on the merits of his Fifth Amendment claim, so the Court need not evaluate the likelihood of success on Petitioner's APA claim for the purposes of the instant Application. Accordingly, the first *Winter* factor is met.

The Application argues that the Government "may not revoke conditional release absent a material change in circumstances, supported by new evidence, and accompanied by notice and an opportunity to be heard"—which Petitioner did not receive. Application at 8. Importantly, the Respondents do not meaningfully dispute that Petitioner has the right to notice and the opportunity to be heard on his redetention, consistent with the applicable regulations. *See generally* Opp.

---

[3] Petitioner cites 8 C.F.R. § **1236.1**(g) as the regulation that Respondents did not follow. There does not appear to be a subsection (g) in that regulation. The Court believes this may have been a clerical error and that Petitioner intended to cite to 8 C.F.R. § **236.1**(g) which addresses the Notice of Custody Determination. In any event, this Court need not address this claim, as it finds independent basis to grant the TRO on Fifth Amendment grounds.

"'The Fifth Amendment entitles [noncitizens[4]] to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).[5]

Due process claims have two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Petitioner is likely to succeed in demonstrating that both elements exist here. As to the first element, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This Court finds, and Respondents do not contest, that Petitioner will likely prevail in demonstrating that his interest in remaining out of custody was a protected liberty interest under the Fifth Amendment. So, too, for the second element: Petitioner is likely to prevail in establishing that detention absent any form of notice or a hearing effectively deprived him of his procedural due process rights. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And Petitioner alleges he was given no opportunity to be heard at all.

---

[4] Where it does not change the meaning, this Court endeavors to use the term "noncitizen" in place of alien, consistent with the practice of the Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' Alien, Webster's Third New International Dictionary 53 (2002), while the word noncitizen, which is synonymous, *see* Alien and Noncitizen, American Heritage Dictionary of English Language 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

[5] In light of *J.G.G.*, it appears that the applicable laws, namely 8 C.F.R. § 241.13(i)(3) and 8 C.F.R. § 241.4(*l*)(1), are the means by which ICE has determined it will meet the due process rights of putative detainees. Under the former, an immigrant who has been released under an order of supervision "will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). Promptly after the immigrant's return to custody, "the Service will conduct an initial informal interview . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Similarly, under Section 241.4(*l*)(1), noncitizens are entitled to "prompt[]" notification "of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4(*l*)(i).
In addition, the Court notes that these regulations may inform how the Respondents can comply with this order, should they attempt to redetain Petitioner in accordance with his constitutional protections.

7

Petition at 2. Respondents' Opposition does not dispute Petitioner's factual account or attempt to justify the lack of process given to Petitioner. To that end, he will likely prevail on the second factor.

This Court's conclusion is consistent with other recent district court rulings. *See, e.g.*, *Kiwana v. LaRose*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *2 (S.D. Cal. Jan. 14, 2026); *Bedrosian v. Noem*, No. 5:25-CV-02814-KES, 2026 WL 127800, at *6 (C.D. Cal. Jan. 15, 2026). Particularly instructive is the Court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facil.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. Because there was no interview opportunity following the notice, the Court found that the procedural deficiencies rose to the level of procedural due process violations. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

For these reasons, Petitioner has shown a likelihood of success on his constitutional claim. Accordingly, the first *Winter* factor is met.

> ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Petitioner must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. Respondents do not address this factor, nor do they argue that Petitioner has failed to make the requisite showing. This Court finds that the second *Winter* requirement is met.

As a threshold matter, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The Government's discretion to issue removal orders is not at issue here. Instead, Petitioner argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v.*

*Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Petitioner's ongoing detention of indeterminate length inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed. Thus, as this Court has already found that Petitioner has a sufficient likelihood of success on the merits of his challenges to his current detention—in part based upon Petitioner's constitutional rights—this Court finds the second *Winter* factor is met.

        iii.   <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court thus considers the third and fourth factors—whether the "balance of equities" is in Petitioner's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities appears to tilt in Petitioner's favor. It is true that the Government has a strong interest in the enforcement of federal immigration law. But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). To that end, "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). This is particularly true given that Respondents do not argue otherwise, nor do they allege that the issuance of a TRO in this matter would cause them harm at all. And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Respondents do not contend that this Court should find otherwise. In sum, the third and fourth *Winter* factors are met here.

**C.  A release order is the appropriate relief.**

Respondents' argument in support of *Maldonado Bautista* limiting Petitioner's relief suggests that a full grant of the TRO—including ordering Petitioner's immediate release—is not an appropriate form of relief for this Court to grant. *See* Opp. at 2. This Court has already addressed why it may consider relief beyond the grant of a bond hearing. *See* Section III.A *supra*. For the reasons below, it determines that Petitioner is entitled to a release order.

First, Petitioner's prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections. The purpose of a temporary restraining order is "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed.). Though the Ninth Circuit has not opined on the matter of scope of preliminary relief in this specific context, other courts in this Circuit have taken a similar approach. *See, e.g., F.M.V. v. Wofford*, No. 1:25-CV-01381, 2025 WL 3083934, at *7 (E.D. Cal. Nov. 4, 2025).

Second, in any event, this Court permits the Government to remedy the procedural deficiency at issue through its Orders issued *infra*. This Court's resolution of this Application—to order Respondents to release Petitioner from custody and not redetain him absent compliance with due process and his legal protections—in effect permits the Government to follow the appropriate steps to reattempt Petitioner's detention.

For those reasons, and seeing no argument from Respondents to the contrary, a release order is the appropriate form of relief.

## IV. Conclusion

For the foregoing reasons, the Application is GRANTED IN PART. Petitioner's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody (and return to him his personal belongings) within forty-eight (48) hours,[6] and they may not redetain him without notice and an opportunity to be heard on his redetention;

2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

3. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

    a. Respondents' brief is due on February 23, 2026. Petitioner may file a response brief by February 25, 2026.

    b. The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on February 20, 2026. Should the parties wish to extend either briefing deadline, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.

    c. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

4. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by February 23, 2026.

IT IS SO ORDERED.

Dated: February 20, 2026

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

[6] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.